UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RUDOLPH V. BYRD,

                            Plaintiff,                    **Hon. Hugh B. Scott**

                                                            **18CV1366**

                             v.                                           **CONSENT**

ANDREW SAUL, COMMISSIONER,        **Order**

                            Defendant.

      Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 10 (plaintiff), 11 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 13, Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

      The plaintiff ("Rudolph Byrd" or "plaintiff") filed an application for disability insurance benefits on June 5, 2015 [R. 16]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), but without counsel or other representation [R. 16,

48-53]. Plaintiff stated that he did not understand the Commissioner's correspondence regarding the hearing and possible sources of representation [R. 49]. The ALJ considered the case de novo and concluded, in a written decision dated July 2, 2018, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on October 2, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 29, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 10, 11), and plaintiff duly replied (Docket No. 12). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, 49 years old when he applied for benefits in June 2015, has a high school education and skills from his past relevant work as a supervisor of landscaping [R. 26]. The ALJ found that plaintiff has severe impairments from degenerative disc disease of the lumbar spine causing back pain [R. 18, 247]. Plaintiff also claims other ailments, such as left knee and ankle pain and depression [R. 19]. The ALJ found that these conditions were not severe [R. 19]. Plaintiff had limited engagement in psychotherapy and this "lack of treatment is not consistent with more than minimal limitations" [R. 19]. Plaintiff testified [R. 87-88, 19] that he did not have any mental impairments that affected his ability to perform basic work activities [R. 19], but plaintiff's answer indicates that family members thought he may have been depressed [R. 88] Plaintiff earlier alleged that his anxiety, depression, difficulty interacting with others, emotional

withdrawal, isolation, difficulty concentrating, and memory caused impaired his ability to perform work activities [R. , 19].

## MEDICAL AND VOCATIONAL EVIDENCE

At issue here is the consideration of the opinion of treating physician, Dr. Ronald Clarke, and those of consultative examiners Drs. Santarpia and Ochoa. On November 10, 2015, Dr. Clarke found that plaintiff was 66% disabled [R. 317-19] (Docket No. 10, Pl. Memo. at 4). On February 7, 2018, Dr. Clarke found that plaintiff could not sit or stand for 15 minutes at a time, but could sit for less than 2 hours a workday [R. 495-98, 496] (id. at 5; Docket No. 12, Pl. Reply at unnumbered page 2). Plaintiff now contends that Dr. Clarke opined that plaintiff could perform sedentary work (Docket No. 10, Pl. Memo. at 8). The ALJ, however, gave less weigh to the doctor's opinion, declaring that Dr. Clarke's findings were inconsistent with the rest of the medical record and that the doctor provided minimal detail to support the severity findings [R. 25]. The ALJ found that Dr. Clarke's opinion "supports limiting the claimant to the range of light work" it :lacks the necessary consistency with the totality of the evidence to adopt his findings [R. 25]. The ALJ also rejected opinions that stated a percentage of disability or opined that plaintiff was "temporarily disabled," such as Dr. Clarke's opinion on November 10, 2015 [R. 319], because those opinions were vague and addressed issues reserved to the Commissioner in determining disability [R. 25].

The ALJ gave great weight to the opinions of consultative examiner, Dr. Sandra Santarpia, Ph.D. [R. 337-40, 20], and to Dr. J. Ochoa [R. 115-16, 20]. Dr. Santarpia found, on May 12, 2016, that plaintiff presented a euthymic mood and with a full range of affect [R. 339, 20]. Dr. Santarpia concluded that plaintiff's "mental health impairments did not result in any

3

deficits in his ability to perform basic work activities or interfere with his ability to function on a daily basis" [R. 20, 339-40]. Dr. Ochoa for the initial disability determination report on May 27, 2016, found that plaintiff's mental disorder was non-severe [R. 115-16, 20]. The ALJ gave Dr. Ochoa's findings great weight because they were consistent with Dr. Santarpia's findings [R. 20].

On December 12, 2016, plaintiff began treatment at the Niagara Falls Department of Mental Health [R. 386-94]. The ALJ noted plaintiff attended few appointments at Niagara Falls Mental Health [R. 19, 401, 402, 403, 434, 448, 449].

The ALJ found that plaintiff now had a residual functional capacity (or "RFC") to perform light work, with the condition that he may be off task about 10% of the workday and absent 8 hours per month [R. 22]. The ALJ then posed hypotheticals to the vocational expert, given a claimant like plaintiff with his RFC, age, education, work experience and skills from his past relevant work; the expert opined that such a claimant could work in such occupations as telephone operator, billing clerk, payroll clerk (all sedentary occupations) [R. 98-101, 27]. Posed with a second hypothetical of the claimant only able to perform unskilled jobs, the vocation expert opined that this claimant could work as a solderer, gluer, or assembler (all light work occupations) [R. 102, 27]

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.   General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

5

>(1) whether the plaintiff is currently working;
>
>(2) whether the plaintiff suffers from a severe impairment;
>
>(3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
>(4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
>(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Clarke (Docket No. 10, Pl. Memo. at 8-11). Plaintiff contends that the ALJ's finding that plaintiff did not have a severe mental impairment was based upon the stale opinions of Drs. Santarpia and Ochoa (id. at 11-14), with these opinions based either upon one examination (Dr. Santarpia) or no examination at all (record review by Dr. Ochoa) (id. at 11). Both opinions were formed before plaintiff sought treatment at the Niagara Falls Department of Mental Health in December 2016 [R. 386-94] (id. at 13). But, as plaintiff concedes, he had few appointments in 2016 and 2017 for mental health with remarkable findings (id. at 13 & n.3).

Defendant responds that the ALJ had substantial evidence to support finding that plaintiff could perform light exertion work based upon the consultative examiner Dr. Donna Miller's findings [R. 342-45] and the opinion of medical consultant Dr. A. Mamaril [R. 502, 24] (Docket No. 11, Def. Memo. at 13-14). Dr. Miller found that, despite plaintiff's claimed impairment, plaintiff had a normal gait, could perform full squats, and negative straight leg raising, had full motor strength, equal reflexes, and intact sensation [R. 343-44, 24] (id. at 4, 13). Dr. Mamaril, a specialist in surgery, reviewed plaintiff's medical record in April 2018 and opined that plaintiff could lift 50 pounds occasionally, 25 pounds frequently, sit for six hours in an 8-hour workday, and stand and or walk for six hours during a workday [R. 502, 508, 24] (id. at 8, 13-14). The ALJ gave some weight to Dr. Mamaril's opinion [R. 25]. Defendant also contends that the ALJ properly relied upon plaintiff's treatment notes, noting the lack of aggressive treatment that would undermine a finding of disability (id. at 14-15).

7

I.      Rejection of Dr. Clarke's Opinion

Plaintiff's claims predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 (2017), such as this one (Docket No. 10, Pl. Memo. at 8). On March 27, 2017, the current version of the SSA regulations eliminates the treating physician's rule for applications filed on or after that date, 20 C.F.R. §§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

The sole factor applied by the ALJ [R. 25] was the consistency of Dr. Clarke's opinion with the rest of the medical record. The ALJ did not address the length of the treatment

8

relationship, the frequency of examinations, the nature of the treatment relationship, or whether Dr. Clarke's specialty is relevant to plaintiff's claimed impairment, see Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (Docket No. 10, Pl. Memo. at 9). The ALJ did not consider Dr. Clarke's longitudinal care of plaintiff but relied instead upon the opinion of a consultant who examined plaintiff once and a medical file reviewer. The ALJ also noted that Dr. Clarke's findings provided minimal detail supporting the severity determination [R. 25]; this is an opportunity, on remand, for the ALJ to complete the record by having Dr. Clarke explain the determination of severity. These errors (failing to consider the all the applicable factors for weighing a treating physician's opinion and not following up on the gap in the record) require remand; plaintiff's motion on this ground is **granted**.

II.     Staleness

Plaintiff argues that Drs. Santarpia and Ochoa's opinions were stale and thus should not have been relied upon. These opinions were rendered in May 2016 before plaintiff sought mental health treatment in December 2016. Staleness invalidates a medical opinion where subsequent treatment notes indicate that a claimant's condition has deteriorated since the old opinion, see Gualtieri o/b/o M.J.G. v. Comm'r of Soc. Sec., No. 17CV821, 2019 WL 3497917, at *7 (W.D.N.Y. Aug. 1, 2019) (Vilardo, J.) (quoting Whitehurst v. Berryhill, No. 16CV1005, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018) (Telesca, J.)). Stale opinions do "not constitute substantial evidence to support an ALJ's findings," Majdandzic v. Comm'r of Soc. Sec., No. 17CV1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018) (Geraci, C.J.); Gualtieri, supra, 2019 WL 3497917, at *10. As noted by Judge Telesca and repeated by Judge

9

Vilardo, "'mere passage of time does not render an opinion stale,'" Gualtieri, supra, 2019 WL 3497917, at *7, quoting Whitehurst, supra, 2018 WL 3868721, at *4.

Here, plaintiff merely alleges the passage of seven months between Dr. Ochoa's review and Dr. Santarpia's examination and plaintiff beginning treatment at Niagara Falls Department of Mental Health. Plaintiff fails to show deterioration from May 2016 to December 2016 to make prior opinions stale. Plaintiff claims that at these sessions he was found to have "remarkable findings" (Docket No. 10, Pl. Memo. at 13), such as having mood changes, a short attention span, preoccupations, fidgetiness, and distractibility (id.) [R. 387, 397, 407 (Aug. 8, 2017), 420]. The note from August 8, 2017, noted plaintiff was at that session due to the passing of his father [R. 407], and the October 6, 2017, also noted plaintiff's obsession with his father's death [R. 420]. Plaintiff fails to show how these latter "snapshots" (cf. id.) are related to his ability to perform work. As defendant notes (Docket No. 11, Def. Memo. at 20), plaintiff's later stresses from caring for his late father and his father's death did not affect plaintiff's ability to perform work activities.

Thus, plaintiff's motion to remand on staleness grounds for certain opinions relied upon by the ALJ is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 10) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 11) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four

of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).   The Clerk of the Court shall close this case.

 So Ordered.

                 *s/Hugh B. Scott*
                 Hon. Hugh B. Scott
               United States Magistrate Judge

Buffalo, New York
March 13, 2020